UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:21-cv-20085

LILLIAN RIDEAUX,

      Plaintiff,

v.

CARNIVAL CORPORATION,
a Panamanian Corporation d/b/a
CARNIVAL CRUISE LINE,

      Defendant.

_____/

**COMPLAINT FOR DAMAGES**
**AND DEMAND FOR TRIAL BY JURY**

Plaintiff, LILLIAN RIDEAUX ("Plaintiff"), through undersigned counsel, sues Defendant,

CARNIVAL CORPORATION, a Panamanian Corporation, d/b/a CARNIVAL CRUISE LINE

("Defendant"), and demands trial by jury, stating as follows:

**PARTIES AND JURISDICTION**

1.    Plaintiff seeks damages in excess of $75,000.00, exclusive of interest, costs and

attorney's fees.

2.    This Court has admiralty and maritime jurisdiction pursuant to 28 U.S.C.§ 1333.

3.    This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, as the matter in

controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between

citizens of different states and/or citizens of a state and citizens or subjects of a foreign state.

4.    Suit is filed in federal court because of the federal forum selection clause in the

passenger contract ticket issued by Defendant.

5.    Plaintiff is *sui juris* and is a resident and citizen of the state of Louisiana.

6.   Defendant is a foreign corporation who is authorized to conduct and who does conduct business in the State of Florida, who at all times material hereto was and is doing business in Miami-Dade County, Florida, and who maintains its corporate headquarters and principal place of business in Miami-Dade County, Florida.

7.   Defendant is a dual citizen of the State of Florida and the nation of Panama.

8.   Defendant, at all times material hereto, personally or through an agent, in Miami-Dade County, Florida, in the Southern District of Florida:

   a.   Operated, conducted, engaged in or carried on a business venture; and/or

   b.   Had an office or agency; and/or

   c.   Engaged in substantial activity; and/or

   d.   Committed one or more of the acts stated in Florida Statutes, §§ 48.081, 48.181 or 48.193.

9.   All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

## DEFINITIONS AND FACTUAL ALLEGATIONS

10.   Hereinafter, the phrase, the "subject area," shall include, but not be limited to, the gangway, and all material and effects pertaining thereto, including the surfaces and angle thereof, the lack of adequate handrails where Plaintiff fell, the gangway's and surface's design and/or visual condition, and/or any other applied, adhesive, and/or other material, and/or the angles of the gangway, the placement of the gangway, the balancing mechanisms and/or other aspects of the gangway that should have prevented it from unreasonably and excessively rocking side to side, and/or the unreasonably rushed and crowded conditions on the subject gangway and/or the unreasonable rushing and lack of reasonable crowd control, including unreasonable lack of social distancing.

11.    At all times material hereto, Defendant owned, operated, maintained, managed, and/or controlled the subject area and the vicinity involved in Plaintiff's incident.

12.    At all times material hereto, Defendant owned, operated, maintained, managed, and/or controlled the cruise ship, the Carnival *Freedom* (the "subject ship").

13.    On or about March 3, 2020, Plaintiff was a fare paying passenger on Defendant's vessel, the Carnival *Freedom*.

14.    Plaintiff was ascending a gangway as she was boarding the subject ship. However, as she was ascending it, she encountered a part of the subject gangway that did not have handrails, the gangway was unreasonably crowded (and Defendant was not controlling this crowd, including its distancing), Defendant was unreasonably rushing the passengers onto the gangway, and the gangway was rocking side to side unreasonably and excessively. As a result, Plaintiff fell into a netted area and suffered severe injuries as a result, including possibly a traumatic brain injury. Furthermore, Defendant unreasonably delayed in treating Plaintiff, including taking an unreasonably long time to see Plaintiff at the medical center.

15.    These dangerous and/or risk-creating conditions of the subject area and vicinity were known or should have been known by Defendant for reasons that include, but are not limited to, because Plaintiff previously observed Defendant's crew members in this area approximately five to ten minutes prior to Plaintiff's incident as she was approaching the area, such that Plaintiff reasonably infers that these crew members were familiar with the dangerous and/or risk-creating conditions thereof. Furthermore, Defendant knew or should have known of these dangerous and/or risk-creating conditions of the subject area and vicinity for reasons that include, but are not limited to, because of the lengthy period of time the conditions existed, as the lack of handrails appeared to be a structural aspect of the subject gangway. Furthermore, Defendant knew or should have

known of these dangerous and/or risk-creating conditions of the subject area and vicinity for reasons that include, but are not limited to, that Plaintiff saw after she fell that the part of the gangway where she fell was worn down such that it appeared to have been used for a significant period of time without being replaced or adequately maintained. Furthermore, Defendant knew or should have known of these dangerous and/or risk-creating conditions of the subject area and vicinity for reasons that include, but are not limited to, that previous passengers suffered prior incidents on the same or similar gangway and/or the same and/or similar place and/or manner of boarding.

16.   To the best of Plaintiff's recollection, knowledge, and belief, and without the benefit of Plaintiff's medical records which Defendant did not provide her, Plaintiff fell at approximately 3:00 p.m. However, Defendant did not allow Plaintiff to present to the medical center immediately after the incident, instead forcing her to wait until approximately 4:30 p.m. However, when Plaintiff was finally allowed into the ship's medical center at approximately 4:30 p.m., Plaintiff had to continue to wait to be treated until she was finally seen by the ship's doctor at, to the best of Plaintiff's recollection, knowledge, and belief, and without the benefit of Plaintiff's medical records which Defendant did not provide her, approximately 5:30 p.m., and the ship's doctor failed to properly diagnose Plaintiff's injury, and as a result, she was in serious pain the entire night. Then Plaintiff presented to the medical center again the following morning, and the ship's doctor took x-rays of Plaintiff and told her to come back the following day, but the ship's doctor still failed to properly diagnose Plaintiff's injuries, and misdiagnosed her with a fracture. The ship's doctor eventual provided Plaintiff pain medication, but due to the prolonged period of time Plaintiff was kept waiting, Plaintiff suffered additional pain and suffering, and her injuries were made worse.

17. At all times relevant, the subject area was unreasonably dangerous, risk-creating, defective, outdated, improperly designed, improperly installed, and/or otherwise unsafe.

18. The subject area and the vicinity lacked adequate safety features to prevent Plaintiff's incident.

19. These hazardous conditions were known, or should have been known, to Defendant in the exercise of reasonable care.

20. These hazardous conditions existed for a period of time before the incident.

21. These conditions were neither open nor obvious to Plaintiff.

22. At all times relevant, Defendant failed to adequately inspect the subject area and the vicinity for dangers, and Defendant failed to adequately warn Plaintiff of the dangers.

23. At all times relevant, Defendant failed to eliminate the hazards.

24. At all times relevant, Defendant failed to maintain the subject area and the vicinity in a reasonably safe condition.

25. At all times relevant, Defendant participated in the design and/or approved the design of the subject area and the vicinity involved in Plaintiff's incident.

26. At all times relevant, Defendant participated in the installation and/or approved the installation of the subject area and the vicinity involved in Plaintiff's incident.

27. The crewmembers of the Carnival *Freedom* were in regular full-time employment of Defendant and/or the ship, as salaried crewmembers, subject to the ship's discipline and master's orders.

28. Defendant had the right to hire and fire its crew.

29. Defendant is directly responsible and liable for its actions and the actions of its crew.

30.    The crewmembers were employees and/or actual agents and/or apparent agents of Defendant, and acted within the course and scope of their employment and/or agency agreement and/or relationship.

31.    The crewmembers were represented to Plaintiff and the ship's passengers as employees of Defendant through signs, documents, and/or uniforms. The crewmembers were also paid a salary and/or an hourly wage by Defendant. Defendant knew that the crewmembers represented themselves to be employees of Defendant and allowed them to represent themselves as such. Plaintiff detrimentally relied on these representations as she would not have proceeded on the subject cruise had she believed the crewmembers were not employees of Defendant.

## COUNT I
## NEGLIGENT FAILURE TO WARN OF DANGEROUS CONDITIONS

32.    Plaintiff hereby adopts and re-alleges each and every allegation in paragraphs 10 through 23 as if set forth herein.

33.    At all times relevant, Defendant owed a duty to exercise reasonable care under the circumstances for the safety of its passengers, including Plaintiff.

34.    Such duty includes, but is not limited to, the duty that Defendant owes to warn passengers of any dangers that it knew or should have known that were not open and obvious to Plaintiff.

35.    Such duty also includes, but is not limited to, the duty to warn passengers of hazards which passengers may reasonably be expected to encounter.

36.    At all times material, Defendant, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with Defendant, breached the duty of reasonable care owed to Plaintiff and was negligent by failing to warn Plaintiff of the dangers posed by the subject area and the vicinity, of which Defendant

knew or should have known of.

37.    These dangerous conditions were also created by Defendant.

38.    Defendant either failed to adequately inspect the subject area and the vicinity to ensure that there were no dangerous conditions that passengers needed to be warned of, or Defendant failed to warn Plaintiff despite knowing of the dangers.

39.    In addition, Defendant either knew or should have known of these dangerous conditions, due to reasons that include, but are not limited to, prior substantially similar incidents, complaints of incidents, complaints of these conditions, the length of time that these conditions existed, Defendant's participation in the instillation and/or design of the subject area and the vicinity, Defendant's acceptance of the ship with these design defects, because these conditions violated relevant safety standards/recommendations/other guidelines, and/or for other reasons that will be revealed during discovery.

40.    Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear and tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

41.    These dangerous conditions existed for a period of time before the incident.

42.    These conditions were neither open nor obvious to Plaintiff.

43.    Defendant's breach was the cause in-fact of Plaintiff's great bodily harm in that, but for Defendant's breach, Plaintiff's injuries would not have occurred.

44.    Defendant's breach proximately caused Plaintiff great bodily harm in that the incident that occurred was a foreseeable result of Defendant's breach.

45.    As a result of Defendant's negligence, Plaintiff has suffered severe bodily injury

resulting in pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, lost wages, and loss of future earning capacity, and loss of the value of Plaintiff's vacation, cruise, and transportation costs.

46.     The losses are either permanent or continuing in nature.

47.     Plaintiff has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, LILLIAN RIDEAUX, demands Judgment against Defendant, CARNIVAL CORPORATION, for damages suffered and costs incurred, as well as for damages and costs that Plaintiff will suffer and incur in the future, as a result of Plaintiff's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, loss of ability to earn money, loss of the value of Plaintiff's vacation, cruise, and transportation costs, loss of important bodily functions, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which the Court deems just or appropriate.

**COUNT II**
**NEGLIGENT DESIGN, INSTALLATION, AND/OR APPROVAL OF THE SUBJECT AREA**

48.     Plaintiff hereby adopts and re-alleges each and every allegation in paragraphs 10 through 26, as if set forth herein.

49.     At all times material hereto, Defendant owed a duty to its passengers, and in particular to Plaintiff, not to permit hazards to be in places where they could harm passengers, such as the area of the incident, as well as to design and install reasonable safeguards.

50.     At all times material hereto, Defendant participated in the design process of the

subject area by generating design specifications for the builder to follow, and put the subject area into the channels of trade, and/or Defendant approved of the subject area's design.

51.     At all times material hereto, Defendant manufactured, designed, installed, and/or approved of the subject area, including providing specifications to the shipbuilder in the original build process, and/or during its refurbishments, and as such owed a duty to its passengers, and in particular to Plaintiff, to design, install and/or approve of the subject area without any defects.

52.     At all times material hereto, Defendant through its agents and/or employees who were acting in the course and scope of their employment and/or agency with Defendant, designed, installed, and/or approved of the subject area involved in Plaintiff's incident, which was also in violation of the applicable industry standards/recommendations/and/or other guidelines.

53.     Defendant provides design elements and/or approves of design elements which include the subject area.

54.     Defendant maintains the contractual right to participate, review, modify, and/or reject the design plans and drawings during the new build process.

55.     Defendant has the right to inspect the subject area during construction to ensure that it is being constructed in accordance with the design specifications and has a right to insist on changes when safety concerns are identified.

56.     Defendant has the right to inspect and reject design elements.

57.     At all times material hereto, Defendant knew or had reason to know the subject area involved in Plaintiff's incident were unreasonably dangerous.

58.     Defendant should have known of these dangerous conditions through inspecting the subject area involved in Plaintiff's incident, and if it did not know of these dangerous conditions, this was because it failed to adequately inspect the subject area involved in Plaintiff's incident.

59.   In addition, Defendant either knew or should have known of these dangerous conditions, due to reasons that include, but are not limited to, prior substantially similar incidents, complaints of incidents, complaints of these conditions, the length of time that these conditions existed, because these conditions violated relevant safety standards, and/or for other reasons that will be revealed during discovery.

60.   Furthermore, the subject area was also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear and tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

61.   However, Defendant permitted dangerous deficiencies to be present in the subject area without correcting these design deficiencies, and did not design and install reasonable safeguards.

62.   The design flaws that made the subject area involved in Plaintiff's incident unreasonably dangerous were the direct and proximate cause of Plaintiff's injuries.

63.   Defendant is liable for the design flaws of the subject area involved in Plaintiff's incident, which it knew or should have known of.

64.   Defendant failed to correct and/or remedy the defective conditions despite the fact that it knew or should have known their danger.

65.   As a result of Defendant's negligence, Plaintiff has suffered severe bodily injury resulting in pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, lost wages, and loss of future earning capacity, and loss of the value of Plaintiff's vacation, cruise, and transportation costs.

66.     The losses are either permanent or continuing in nature.

67.     Plaintiff has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, LILLIAN RIDEAUX, demands Judgment against Defendant, CARNIVAL CORPORATION, for damages suffered and costs incurred, as well as for damages and costs that Plaintiff will suffer and incur in the future, as a result of Plaintiff's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, loss of ability to earn money, loss of the value of Plaintiff's vacation, cruise, and transportation costs, loss of important bodily functions, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which the Court deems just or appropriate.

## COUNT III
## NEGLIGENCE AGAINST DEFENDANT FOR THE ACTS OF ITS CREWMEMBERS BASED ON VICARIOUS LIABILITY

68.     Plaintiff hereby adopts and re-alleges each and every allegation in paragraphs 10 through 31, as if set forth herein.

69.     Defendant owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

70.     To the extent Defendant contests its responsibility for the conduct of its crew members, including the crew member(s) that failed to adequately inspect, clean, and/or maintain the subject area and the vicinity, warn passengers of the risk creating and/or dangerous conditions, and/or do other activities to help make sure the subject area and the vicinity were safe, Plaintiff alleges that these individuals were agents of Defendant, for the following reasons:

71.     The crewmembers were the employees of Defendant, or were Defendant's agents,

apparent agents, and/or servants.

72.   The crewmembers were subject to the right of control by Defendant.

73.   The crewmembers were acting within the scope of their employment or agency.

74.   Defendant acknowledged that the crew and officers would act on Defendant's behalf, and they accepted the undertaking.

75.   Defendant is vicariously liable for the acts of its crewmembers.

76.   Defendant is vicariously liable for its crew members' negligent acts of failing to inspect, clean, and/or maintain, the subject area and the vicinity, failing to warn passengers of the risk creating and/or dangerous conditions, and/or failing to do other activities to help make sure the subject area and the vicinity were safe.

77.   This negligence proximately caused Plaintiff great bodily harm in that, but for this negligence, Plaintiff's injuries would not have occurred.

78.   As a result of Defendant's negligence, Plaintiff has suffered severe bodily injury resulting in pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, lost wages, and loss of future earning capacity, and loss of the value of Plaintiff's vacation, cruise, and transportation costs.

79.   The losses are either permanent or continuing in nature.

80.   Plaintiff has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, LILLIAN RIDEAUX, demands Judgment against Defendant, CARNIVAL CORPORATION, for damages suffered and costs incurred, as well as for damages and costs that Plaintiff will suffer and incur in the future, as a result of Plaintiff's bodily injury,

pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, loss of ability to earn money, loss of the value of Plaintiff's vacation, cruise, and transportation costs, loss of important bodily functions, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which the Court deems just or appropriate.

**COUNT IV**
**NEGLIGENT FAILURE TO INSPECT, CLEAN, MAINTAIN, REPAIR, REMEDY, AND/OR TAKE OTHER REASONABLE MEASURES FOR THE SAFETY OF PLAINTIFF**

81.    Plaintiff hereby adopts and re-alleges each and every allegation in paragraphs 10 through 24 as if set forth herein.

82.    Defendant owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

83.    This duty includes, but is not limited to, the duty to provide its passengers reasonable care by adequately inspecting, cleaning, maintaining, repairing, and/or remedying the subject area and the vicinity, and/or making other efforts to make sure the subject area and the vicinity were safe for the use and enjoyment of its passengers.

84.    At all times material, Defendant, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with Defendant, breached the duty of reasonable care owed to Plaintiff and were negligent by failing to adequately inspect, clean, maintain, repair, and/or remedy the subject area and the vicinity, and/or to make other efforts to make sure the subject area and the vicinity were safe, such that the unreasonably risk creating and/or dangerous conditions existed, and/or the subject area and the vicinity did not function properly.

85.    These risk creating and/or dangerous conditions were caused by design defects and/or

by Defendant's failure to adequately inspect, clean, maintain, repair, and/or remedy the subject area and the vicinity, and/or make other efforts to make sure the subject area and the vicinity were safe.

86.   Defendant's failure to adequately clean, maintain, repair, and/or remedy the subject area and the vicinity, and/or to make other efforts to make sure the subject area and the vicinity were safe, was either due to its failure to adequately inspect the subject area and the vicinity prior to Plaintiff's incident to ensure they were in a reasonably safe condition, or due to its failure to adequately clean, maintain, repair, and/or remedy the subject area and the vicinity, and/or to make other efforts to make sure the subject area and the vicinity were safe, despite its knowledge of the dangerous conditions, which posed a risk to its passengers.

87.   In addition, Defendant either knew or should have known of these dangerous conditions, due to reasons that include, but are not limited to, prior substantially similar incidents, complaints of incidents, complaints of these conditions, the length of time that these conditions existed, Defendant's participation in the instillation and/or design of the subject area and the vicinity involved in Plaintiff's incident, Defendant's acceptance of the ship with these design defects, and/or because these conditions violated relevant safety standards.

88.   Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear and tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

89.   Defendant's negligence proximately caused Plaintiff great bodily harm in that, but for Defendant's negligence, Plaintiff's injuries would not have occurred.

90.   As a result of Defendant's negligence, Plaintiff has suffered severe bodily injury

resulting in pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, lost wages, and loss of future earning capacity, loss of the value of Plaintiff's vacation, cruise, and transportation costs.

91. The losses are either permanent or continuing in nature.

92. Plaintiff has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, LILLIAN RIDEAUX, demands Judgment against Defendant, CARNIVAL CORPORATION, for damages suffered and costs incurred, as well as for damages and costs that Plaintiff will suffer and incur in the future, as a result of Plaintiff's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, and lost earning capacity, loss of the value of Plaintiff's vacation, cruise, and transportation costs, loss of important bodily functions, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which the Court deems just or appropriate.

**COUNT V**
**VICARIOUS LIABILITY AGAINST DEFENDANT**
**FOR THE NEGLIGENCE OF THE SHIP'S MEDICAL STAFF**

93. Plaintiff incorporates by reference and re-alleges as though originally alleged herein the allegations of paragraphs 11 through 14, and paragraph 16, and further alleges:

94. Defendant, through the ship's medical staff (including its physicians and nurses), and the ship's crew, owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

95. Such duties include, but are not limited to, providing such medical care and

assistance as would an ordinarily prudent person under the circumstances.

96.  At all times material, the ship's medical staff (including its physicians and nurses), and the ship's crew, were full time employees and agents of Defendant, subject to its direction and control, who were engaged in the activity of discharging Defendant's obligation to make such medical aid and assistance available to its passengers as would an ordinarily prudent person under the circumstances.

97.  Defendant is estopped to deny that the ship's medical staff (including its physicians and nurses), and the ship's crew, were its agents and/or employees and/or servants.

98.  Defendant directly paid the ship's medical personnel and regular crew a salary (i.e., payment by time) for their work in the ship's hospital and in treating passengers.

99.  Defendant created, owned, directly provided, and operated, the medical center to be used by the ship's medical personnel and passengers.

100.  Defendant pays to stock the medical center with all supplies, medical machinery, various medicines, and equipment to be used therein, regularly stocking and restocking same.

101.  Defendant collected all medical revenues directly from passengers and generated a profit on the sale of medical services, supplies, and equipment made by the ship's medical personnel to the passengers of the vessel.

102.  Defendant's marketing materials described the infirmary in proprietary language.

103.  The ship's medical personnel were members of the ship's crew; they were subject to the ship's discipline; they were required to wear the ship's uniforms; they (and, in particular, the ship's physicians) were members of the ship's officer's compliment, and at all times they were subject to termination, or other discipline, by Defendant.

104. Defendant provided the ship's medical personnel certain forms of liability insurance and/or indemnification rights.

105. Defendant, through the ship's medical staff (including its physicians and nurses), and the ship's crew, breached its duties, and was negligent by failing to adequately examine, diagnose, and/or treat Plaintiff's injuries.

106. Furthermore, Defendant, through its employees and/or agents, breached its duties, and was negligent because the physicians and/or other crew members that were responsible for treating Plaintiff lacked adequate experience in treating the injuries Plaintiff suffered.

107. Defendant, through the ship's medical staff (including its physicians and nurses), and the ship's crew, also breached its duties and was negligent by failing to adequately supply and equip its medical center to be able to adequately examine, diagnose, and treat Plaintiff's injuries.

108. Moreover, Defendant, through the ship's medical staff (including its physicians and nurses), and the ship's crew, breached its duties, and was negligent by failing to take proper measures to ensure that Plaintiff was able to obtain the medical treatment Plaintiff needed in a reasonable amount of time, and as a result, Plaintiff suffered additional injuries and/or Plaintiff's injuries were aggravated and made worse.

109. Additionally, at all times material hereto, Defendant, through the ship's medical staff (including its physicians and nurses), and the ship's crew, was careless, negligent, and breached its duties as follows (for factual details, see paragraph 16 of Plaintiff's complaint):

    a.  Failing to promptly provide Plaintiff with proper medical care and attention;

    b.  Failing to timely and properly diagnose and/or assess Plaintiff's medical condition;

    c.   Failing to timely and properly attend to the Plaintiff, Plaintiff's injuries, and Plaintiff's pain;

    d.   Failing to provide reasonable medical care;

    e.   Failing to timely and properly treat and care for the Plaintiff;

    f.   Failing to timely and properly examine the Plaintiff's injuries;

    g.   Failing to take proper measures to secure proper treatment for Plaintiff, including unreasonably delaying taking measures to secure such proper treatment; and/or

    h.   Failing to properly bring and/or arrange for Plaintiff to be brought to the ship's infirmary/medical center within a reasonable amount of time; and/or

    i.   Failing to give Plaintiff proper discharge instructions.

110.  Under the doctrine of Respondeat Superior, employers are vicariously liable for the negligent acts or omissions by their employees and/or other agents within the course of their employment and/or agency.

111.  Defendant is therefore vicariously liable for all injuries and damages sustained by Plaintiff as a result of the negligence of the ship's medical staff (including its physicians and nurses), and the ship's crew.

112.  At all times material hereto, the aforementioned acts or omissions on the part of the Defendant's ship's medical staff (including its physicians and nurses), and the ship's crew, fell below the standard of care.

113.  The negligence of Defendant's ship's medical staff (including its physicians and nurses), and the ship's crew, proximately caused Plaintiff great bodily harm in that, but for Defendant's negligence, Plaintiff's injuries would not have occurred and/or said injuries would

have been substantially lessened.

114.  Defendant, through its employees and agents, to wit, the ship's medical staff, knew or should have known that the medical procedures they employed violated and/or did not meet reasonable standards of medical care.

115.  As a result of Defendant's negligence, Plaintiff has suffered severe bodily injury resulting in pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, lost wages, and loss of future earning capacity, loss of the value of Plaintiff's vacation, cruise, and transportation costs.

116.  The losses are either permanent or continuing in nature.

117.  Plaintiff has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, LILLIAN RIDEAUX, demands Judgment against Defendant, CARNIVAL CORPORATION, for damages suffered and costs incurred, as well as for damages and costs that Plaintiff will suffer and incur in the future, as a result of Plaintiff's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, and lost earning capacity, loss of the value of Plaintiff's vacation, cruise, and transportation costs, loss of important bodily functions, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which the Court deems just or appropriate.

## COUNT VI
## <u>APPARENT AGENCY AS TO DEFENDANT</u>
## <u>FOR THE ACTS OF THE SHIP'S MEDICAL STAFF</u>

118.  Plaintiff incorporates by reference and re-alleges as though originally alleged herein

the allegations of paragraphs 11 through 14, and paragraph 16, and further alleges:

119.  At all times material hereto, the ship's medical staff were represented to the Plaintiff and the ship's passengers as employees and/or agents and/or servants of Defendant, in that:

      a.   The medical staff wore a ship's uniform;

      b.   The medical staff ate with the ship's crew;

      c.   The medical staff was under the commands of the ship's officers;

      d.   The medical staff worked in the ship's medical department;

      e.   The medical staff was paid a salary by Defendant;

      f.   The medical staff worked aboard the vessel;

      g.   The medical staff spoke to the Plaintiff as though they had authority to do so by Defendant.

120.  In addition, Defendant further represented to Plaintiff that the vessel's medical staff were agents and/or employees of Defendant through its marketing materials and through other official statements that described the infirmary in proprietary language, including language such as "Carnival's/the Carnival *Freedom*'s/our infirmary/medical center," and through encouraging Plaintiff to make use of "its" infirmary/medical center if Plaintiff was in need of medical attention.

121.  Furthermore, at no time did Defendant represent to the Plaintiff in particular, or the ship's passengers in general, in a meaningful way that the vessel's medical staff were not agents or employees of Defendant.

122.  At all material times, Plaintiff reasonably relied on the representations to Plaintiff's detriment that the medical staff were employees, and/or agents, and/or servants of Defendant.

123.  It was reasonable to believe that the medical staff were Defendant's agents because they wore a ship's uniform. In addition, at all times material, the medical staff spoke and acted as though they were authorized to do so by Defendant.

124.  This reasonable reliance was detrimental because it delayed Plaintiff from receiving proper medical treatment and/or Plaintiff would not have gone on the subject cruise with Defendant had Plaintiff known that the medical staff on the ship were not Defendant's agents.

125.  Defendant is estopped to deny that the medical staff were its apparent agents, and/or apparent employees, and/or apparent servants.

126.  Defendant had a duty to provide Plaintiff with reasonable care under the circumstances and through the acts of its apparent agents breached its duty to provide Plaintiff with reasonable care under the circumstances.

127.  Plaintiff's injuries were aggravated due to the fault and/or negligence of Defendant through the acts of its apparent agents as follows (for factual details, see paragraph 16 of Plaintiff's complaint):

    a.  Failing to promptly provide Plaintiff with proper medical care and attention;

    b.  Failing to timely and properly diagnose and/or assess Plaintiff's medical condition;

    c.  Failing to timely and properly attend to the Plaintiff, Plaintiff's injuries, and Plaintiff's pain;

    d.  Failing to provide reasonable medical care;

    e.  Failing to timely and properly treat and care for the Plaintiff;

    f.  Failing to timely and properly examine the Plaintiff's injuries;

    g.  Failing to take proper measures to secure proper treatment for Plaintiff, including unreasonably delaying taking measures to secure such proper

treatment; and/or

h.  Failing to properly bring and/or arrange for Plaintiff to be brought to the ship's infirmary/medical center within a reasonable amount of time; and/or

i.  Failing to give Plaintiff proper discharge instructions.

128. As a result of Defendant's negligence, Plaintiff has suffered severe bodily injury resulting in pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, lost wages, and loss of future earning capacity, loss of the value of Plaintiff's vacation, cruise, and transportation costs.

129. The losses are either permanent or continuing in nature.

130. Plaintiff has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, LILLIAN RIDEAUX, demands Judgment against Defendant, CARNIVAL CORPORATION, for damages suffered and costs incurred, as well as for damages and costs that Plaintiff will suffer and incur in the future, as a result of Plaintiff's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, and lost earning capacity, loss of the value of Plaintiff's vacation, cruise, and transportation costs, loss of important bodily functions, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which the Court deems just or appropriate.

## COUNT VII
### ASSUMPTION OF DUTY AS TO DEFENDANT FOR THE NEGLIGENCE OF THE SHIP'S MEDICAL STAFF

131. Plaintiff incorporates by reference and re-alleges as though originally alleged herein

the allegations of paragraphs 11 through 14, and paragraph 16, and further alleges:

132. Defendant owed Plaintiff the duty to exercise reasonable care under the circumstances for the safety of its passengers.

133. Such duties include, but are not limited to, providing such medical care and assistance as would an ordinarily prudent person under the circumstances.

134. Defendant elected to discharge this duty by having Plaintiff seen by its own ship's physicians and/or other crew members.

135. As such, Defendant voluntarily assumed a duty for the benefit of Plaintiff to use reasonable care in the provision of medical services to the Plaintiff.

136. Defendant breached its duties, and was negligent by failing to adequately examine, diagnose, and/or treat Plaintiff's injuries.

137. Furthermore, Defendant breached its duties, and was negligent because the physicians and/or other crew members that were responsible for treating Plaintiff lacked adequate experience in treating injuries such as the one Plaintiff suffered.

138. Defendant also breached its duties and was negligent by failing to adequately supply its medical center to be able to adequately examine, diagnose, and treat Plaintiff's injuries.

139. Defendant breached its duties and was negligent by failing to take proper measures to ensure that Plaintiff was able to obtain the medical treatment Plaintiff needed in a reasonable amount of time, and as a result, Plaintiff suffered additional injuries and/or Plaintiff's injuries were aggravated and made worse.

140. Additionally, at all times material hereto, Defendant was careless, negligent, and breached its duties as follows (for factual details, see paragraph 16 of Plaintiff's complaint):

a.   Failing to promptly provide Plaintiff with proper medical care and attention;

b.   Failing to timely and properly diagnose and/or assess Plaintiff's medical condition;

c.   Failing to timely and properly attend to the Plaintiff, Plaintiff's injuries, and Plaintiff's pain;

d.   Failing to provide reasonable medical care;

e.   Failing to timely and properly treat and care for the Plaintiff;

f.   Failing to timely and properly examine the Plaintiff's injuries;

g.   Failing to take proper measures to secure proper treatment for Plaintiff, including unreasonably delaying taking measures to secure such proper treatment; and/or

h.   Failing to properly bring and/or arrange for Plaintiff to be brought to the ship's infirmary/medical center within a reasonable amount of time; and/or

i.   Failing to give Plaintiff proper discharge instructions.

141.  At all times material hereto, the aforementioned acts or omissions on the part of Defendant fell below the standard of care.

142.  Defendant's negligence proximately caused Plaintiff great bodily harm in that, but for Defendant's negligence, Plaintiff's injuries would not have occurred, would have been substantially lessened, and/or would not have been aggravated.

143.  Defendant, through its employees and agents, to wit, the ship's medical staff, knew, or should have known, that the medical procedures they employed violated reasonable standards of medical care.

144.  As a result of Defendant's negligence, Plaintiff has suffered severe bodily injury resulting in pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the

enjoyment of life, expense of hospitalization, medical and nursing care and treatment, lost wages, and loss of future earning capacity, loss of the value of Plaintiff's vacation, cruise, and transportation costs.

145.  The losses are either permanent or continuing in nature.

146.  Plaintiff has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, LILLIAN RIDEAUX, demands Judgment against Defendant, CARNIVAL CORPORATION, for damages suffered and costs incurred, as well as for damages and costs that Plaintiff will suffer and incur in the future, as a result of Plaintiff's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, and lost earning capacity, loss of the value of Plaintiff's vacation, cruise, and transportation costs, loss of important bodily functions, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which the Court deems just or appropriate.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff, LILLIAN RIDEAUX, demands trial by jury on all issues so triable.

**Dated:** January 7, 2021.

Respectfully submitted,

_/s/ Matthias M. Hayashi_
**Spencer M. Aronfeld, Esq.**
Florida Bar No.: 905161
aronfeld@Aronfeld.com
**Abby H. Ivey, Esq.**
Florida Bar No.: 1002774
aivey@aronfeld.com
**Matthias M. Hayashi**
Florida Bar No.: 115973
mhayashi@aronfeld.com

**ARONFELD TRIAL LAWYERS**
**Aronfeld.com**

**ARONFELD TRIAL LAWYERS**
One Alhambra Plaza, Penthouse
Coral Gables, Florida 33134
P:      (305) 441.0440
F:      (305) 441.0198
***Attorneys for Plaintiff***